**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Daniel John CELESTINE,**
**Defendant-Appellant.**

No. 74–1801.

United States Court of Appeals,
Ninth Circuit.

Jan. 2, 1975.

458

Lauren W. Dobbs, Yakima, Wash. (argued), for defendant-appellant.

Robert S. Linnell, Asst. U. S. Atty. (argued), Spokane, Wash., for plaintiff-appellee.

Before MERRILL and HUFSTEDLER, Circuit Judges, and TAYLOR,* District Judge.

## OPINION

FRED M. TAYLOR, District Judge:

Daniel Celestine, an Indian, has appealed from his conviction on one count of second degree murder within the Yakima Indian Reservation in violation of

* Of the District of Idaho, sitting by designation.

1. Title 18, U.S.C. § 1153 provides:
    "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."
    Title 18, U.S.C. § 1111 provides:
    "(a) Murder is the unlawful killing of a human being with malice aforethought.

Title 18, U.S.C. § 1153.[1] Following his jury trial, appellant's motions for judgment of Acquittal, Arrest of Judgment, or for a New Trial were denied by the trial court and the appellant, then eighteen years of age, was sentenced under the Federal Youth Correction Act (18 U.S.C. § 5005 et seq.) to imprisonment of not more than ten years.

The record shows that Rita Sweowaht, a 20 year old Indian girl, was with the appellant in the early morning of July 5, 1973. The two were heard arguing and approximately an hour later the appellant was seen with blood on his shirt, shoes and hands. Eleven days later, the girl was found dead in an Indian sweat house (a partially underground structure in which the Indians took sauna baths).

In a signed statement, Celestine admitted he was with the deceased on July 5 at a party; that he was intoxicated at the time; that he followed Miss Sweowaht when she left the party and that when she resisted his sexual advances, he beat her with his fists. The appellant stated that the next thing he remembered was that the girl had no clothes on and he was kicking a stick into her vagina. Celestine then went back to the party and fell asleep. On awakening, he went back to the victim and, not knowing whether she was alive or dead, dragged her to the sweat house and placed her inside. Testimony at the trial established that a stake was protruding three to four inches from the victim's vagina when she was found. Several days after the autopsy, a stake 11½ inches long and one inch square was re-

Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
"Any other murder is murder in the second degree."

moved from the body by a funeral director.

The coroner who performed the autopsy was unsure of the cause of death at the time he examined the body. He did note that the fat around the heart was distended with gas and the heart itself was full of gas bubbles. The prosecution posed a hypothetical question to the coroner requesting his opinion as to the result of forcing a one inch square stake eight to eight and one-half inches into the vaginal tract of a 20 year old woman. Over defendant's objection, the coroner testified that the stake would have penetrated the wall of the vagina and the lower intestine behind it causing infection and allowing bacteria to enter the blood stream (septicemia). The coroner further stated that if these bacteria were gas bacilli, gas would form in the organs, resulting in the death of the victim.

The coroner did not see the stake in the body at the time he performed his autopsy. However, he did note that the intestines were collapsed, but did not observe any rupture of the intestines. The body was rather badly decomposed and maggots infested the interior thereof which obscured the coroner's view. The coroner, who did not know the body was inside a sweat house, fixed the time of death from three to five days prior to the time the body was found. He based his opinion on the deterioration of the body and maximum temperatures of over 100° Fahrenheit during early July.

■■ Appellant's initial contention is that as a matter of law the evidence was not sufficient to support a finding that Celestine caused the death of Rita Sweowaht, nor was the evidence sufficient to show that the appellant acted with malice aforethought. After carefully reviewing all the evidence produced at the trial, considered in the light most favorable to the government, together with the reasonable inferences which may be drawn therefrom, we are convinced that there was an abundance of evidence from which the jury could find that the appellant caused the death of the girl. See Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Munns, 457 F.2d 271 (9th Cir. 1972), cert. den. 409 U.S. 871, 93 S.Ct. 199, 34 L.Ed.2d 121 (1972); Kaplan v. United States, 329 F.2d 561 (9th Cir. 1964). Furthermore, the jury could reasonably find that appellant acted with malice aforethought. Malice aforethought is the condition of a person's mind. Since no one can look into the mind of another, the only way to decide what is in his mind is to infer it from his acts and that inference is one of fact for the jury. Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). Malice aforethought does not mean simply hatred or ill will, but also embraces the state of mind with which one intentionally commits a wrongful act without legal justification or excuse. It may be inferred from circumstances which show "a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences." Government of Virgin Islands v. Lake, 362 F.2d 770 (3rd Cir. 1966); United States v. Hinkle, 159 U.S.App. D.C. 334, 487 F.2d 1205 (1973). The act attributed to the appellant certainly permits, if it does not require, the conclusion that the homicide was accompanied by a callous and wanton disregard of human life.

■■ The appellant next argues that the jury instruction given on implied malice was reversible error.[2] A circumstance which a jury may properly consider in deciding whether a defendant acted with malice is whether he used a weapon or other instrument upon his victim in such a manner as may be expected naturally and probably to cause death. Government of Virgin Islands v.

---

2. The court instructed:
   "The next instruction relates to the stick. If it is shown that the defendant used a stick on the body of the deceased in a manner likely to cause her death, then you may find from the use of such stick, in the absence of explanatory or mitigating circumstances the existence of malice, which is an essential element of the offense."

Lake, supra. Appellant recognizes the general rule of implied malice, but argues that the failure to use and define the term "deadly weapon" in the instruction given and the failure to state that the deadly weapon caused the death of the deceased is reversible error. We do not agree. Considering the court's instructions, as a whole, in regard to the element of malice aforethought,[3] and in light of the strong and unequivocal evidence of malice, it was not reversible error for the court to give the instruction.

Although the trial court instructed the jury on the crimes of second degree murder and voluntary manslaughter, the appellant contends the court erred in refusing to give his requested instruction on involuntary manslaughter. Rule 31(c) of the F.R.Cr.P. allows a defendant to be found guilty of an offense necessarily included in the offense charged. Manslaughter is recognized as a lesser included offense within second degree murder. Stevenson v. United States, supra; Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150 (1967). However, in order for a defendant to be entitled to an instruction as to a lesser included offense, there must be evidence in the record which would enable a jury to rationally find the existence of all the elements of the lesser included offense. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); United States v. Comer, 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970); Simon v. United States, 137 U.S.App.D.C. 308, 424 F.2d 796. After a thorough reading of the record, we are unable to discern any reasonable set of circumstances from which the jury could return a verdict of involuntary manslaughter.[4] Even assuming, as appellant argues, that the jury might find that the girl was alive at the time Celestine placed her in the sweat house and that his only wrongful act was hiding the victim and not seeking medical aid for her, this in and of itself would constitute an act in wanton and callous disregard of human life. The element of malice would thus be present, eliminating the necessity for an involuntary manslaughter instruction.

Appellant next argues that the hypothetical question asked the coroner should not have been permitted by the trial court. The coroner, however, gave his expert opinion in regard to the cause of death based only on facts established by his own observations and the established facts in evidence. It was not error to permit the expert's opinion based on facts in evidence. United States v. Carlson, 423 F.2d 431 (9th Cir. 1970), cert. den. 400 U.S. 847, 91 S.Ct. 94, 27 L.Ed.2d 84 (1970); Permanente Steamship Corporation v. Martinez, 369 F.2d 297 (9th Cir. 1966).

Appellant's final contention is that the trial court committed reversible error in failing to give his requested instruction on the joint operation of mens rea and actus rea. The record is devoid of any objection by the appellant in regard to the failure of the court to give this instruction and, absent plain error,

---

3. The trial court instructed:

"Now this next instruction defines malice aforethought, that term that you have heard quite often. Malice aforethought means an intent at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life. * * * In determining whether Rita Sweowat [sic] was unlawfully killed with malice aforethought, the jury should consider all the facts and circumstances preceding, surrounding, and following the killing, as shown by the evidence in the case, which tend to shed light upon the condition of mind and heart of the killer before and at the time of the deed. No fact, no matter how small, no circumstance, no matter how trivial, which bears upon the question of malice aforethought should escape careful consideration by the jury."

4. Title 18, U.S.C. § 1112 provides:

"(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
Voluntary—Upon a sudden quarrel or heat of passion.
Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death."

he is foreclosed from raising this issue for the first time on appeal. Rule 30, 52(b) F.R.Cr.P.; United States v. Johnson, 463 F.2d 216 (9th Cir. 1972), cert. den. 409 U.S. 1028, 93 S.Ct. 472, 34 L.Ed.2d 322; White v. United States, 394 F.2d 49 (9th Cir. 1968). After fully considering the evidence and all of the trial court's instructions,[5] we find no reversible error.

Accordingly, the conviction of appellant should be, and the same hereby is, affirmed.

5. The court gave a number of instructions bearing on joint operation of mens rea and actus rea. Among them were:

"* * * Malice aforethought means an intent at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life. But malice aforethought does not necessarily imply any ill will, spite, hatred, toward the individual killed. Malice, as the term is used here, is but another name for a certain state or condition of a person's mind or heart. Since no one can look into the heart or mind of another, the only means of determining whether or not malice existed at the time of a killing is by inference drawn from surrounding facts and circumstances as shown by the evidence in the case. . . ."

"* * * Specific intent is a term which means more than the general intent to commit the act, and to establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law."

"* * * Expert testimony on the issue of a defendant's mental condition is not binding on the jury, you should however consider it together with all the other evidence in the case in determining the defendant's mental condition at the time of the alleged commission of the alleged crime charged in the indictment."

"Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent, so evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted or failed to act with specific intent as charged."