UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony Darrell LESINA,
Defendant–Appellant.

No. 86–3075.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1987.

Decided Nov. 27, 1987.

William W. Youngman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Stephen R. Sady, Federal Public Defenders Office, Portland, Or., for defendant-appellant.

Before ANDERSON, TANG and NOONAN, Circuit Judges.

TANG, Circuit Judge:

Defendant Anthony Darrell Lesina appeals a conviction of second degree murder.

Lesina argues that the district court's jury instructions deprived him of his Fifth Amendment guarantee of due process. We agree, reverse and remand for a new trial.

## I

Lesina lived with Marvena Meanus, his fiancee, and Elarrio Medina, his best friend and Meanus' cousin, in a house on the Warm Springs Indian Reservation in Oregon. Lesina and Meanus had been living together for over a year, and had a baby who was only a few days old at the time of the incident. On the morning of December 12, 1985, Lesina, Medina and Meanus did some bead work, and smoked some marijuana. Later, the two men worked on Lesina's car and, at around 3:00 p.m., took it for a drive. Lesina told Meanus that he and Medina were going to talk to a customer about some bead work that Lesina had done. While driving around the reservation, Lesina and Medina bought and consumed four forty-ounce bottles of beer between 3:00 and 4:00 p.m. After the pair consumed the last bottle of beer, Lesina's car broke down. Lesina and Medina got a ride back to the house from Lesina's mother. Upon arriving at the house, Lesina and Medina entered through the back door. Medina went into the living room. Lesina went into the kitchen, where Meanus was chopping vegetables with an eight-inch kitchen knife. Lesina and Meanus spoke briefly about the car trouble and Lesina told Meanus that he had been unable to collect from the customer for the bead work. Meanus responded that Lesina should not to be so impatient. Lesina accused Meanus of impatience and of calling their baby bad names. Meanus denied this accusation and the argument escalated. Lesina then struck Meanus on the side of the head with his closed fist, and challenged Meanus to use the knife on him. Meanus testified that she thought she could scare him by holding the knife in her hand. Lesina pushed Meanus to the floor and a struggle ensued, with Lesina beating Meanus repeatedly about the face and holding her by the throat. The knife fell from Meanus' grasp.

Medina rushed into the kitchen in an apparent attempt to break up the fight. At this point, the facts blur. Meanus testified before the grand jury that Lesina stood, faced Medina, and made a pushing motion. At trial, however, Meanus testified that she did not see Lesina "do anything aggressive" toward Medina. Lesina testified that he grabbed the knife from Meanus' grasp, and yanked it upwards and away when Medina suddenly jumped on top of him.

The knife penetrated Medina's heavy leather winter jacket and chest wall, severed one of his ribs and nicked another, pierced his lung and heart, and pierced his spinal cord. The wound was seven and one-half inches deep. Medina staggered out of the house and collapsed in the snow. Medina died that night at the hospital. One hour after the stabbing, Lesina was placed under arrest and submitted to a blood alcohol test which revealed a .17 percent blood alcohol level.

A Bureau of Indian Affairs investigator interviewed Lesina that evening. Lesina stated that he picked up the knife after all three people had fallen to the floor and attempted to throw it back over his head, whereupon Medina apparently collided with it. When interviewed the next day, Lesina stated that Medina was rushing into the room when he collided with the knife. At all times Lesina told investigators that the killing had been an accident.

A Grand Jury indicted Lesina on December 17, 1985 for killing Medina with malice aforethought in violation of 18 U.S.C. § 1111. At trial, expert testimony established that the wound was equally consistent with Lesina's testimony and Meanus' grand jury testimony. The prosecutor made the following remarks at closing argument:

> [Malice aforethought means] number one, intent, but it also has a second definition. And that is the definition that fits here and that is acts done in callous and reckless disregard. Not intentional acts. And I have not once told you that the Government is proceeding in this case on intentional acts because we're not. We're proceeding in this case on

the prong of malice aforethought which is a series, an act or series of acts done in callous and reckless disregard for the consequences.

Lesina submitted several proposed instructions that the district court declined to read. One stated in part:

> If the resultant death was merely accidental or the result of a misadventure or due to simple negligence, or an honest error of judgment, ... you must vote to acquit the defendant.

Another read:

> In order to establish malice aforethought, the government must prove to you beyond a reasonable doubt that the incident did not occur upon a sudden quarrel or heat of passion.

The district court instructed the jury on second degree murder, voluntary manslaughter, and involuntary manslaughter. The instructions read in part:

> In order for defendant Lesina to be found guilty of the crime of murder in the second degree, the Government must prove.... the defendant killed Elarrio Antone Medina with malice aforethought.... To kill with malice aforethought means either to deliberately and intentionally kill another person *or to act with callous and reckless disregard for human life....*
>
> In order for defendant Lesina to be found guilty of the crime of voluntary manslaughter, the Government must prove ... that defendant Lesina acted in the heat of passion or upon a sudden quarrel....
>
> In order for defendant Lesina to be found guilty of the crime of involuntary manslaughter, the Government must prove.... that defendant Lesina acted without malice, but with *wanton or reckless disregard for human life.*

(Emphasis added).

Defense counsel took exception to the district court's instructions:

> This—the act of callous or reckless disregard for human life. How is the jury going to differentiate between that and involuntary manslaughter which is wanton and reckless misconduct.

The court declined to alter the language that defense counsel found objectionable. During deliberations, the jury sent a note to the judge requesting further instructions clarifying the distinction between voluntary manslaughter and second degree murder. The judge declined to provide further instructions. On March 3, 1986, the jury found Lesina guilty of second degree murder. The court sentenced Lesina on April 21, 1986, to a sentence of ten years incarceration.

## II

The district court erred in failing to distinguish adequately the mens rea requirements for second degree murder and involuntary manslaughter in its instructions to the jury.

■ The court instructed the jury that to find Lesina guilty of committing second degree murder, the government must prove, in part, that Lesina killed Medina with malice aforethought. The court defined malice aforethought as follows:

> To kill with malice aforethought means either to deliberately and intentionally kill another person *or to act with callous or reckless disregard for human life.* (Emphasis added).

In its instructions on the crime of involuntary manslaughter, the court told the jury that the government must prove, in part, that Lesina killed Medina "without malice, but with *wanton or reckless disregard for human life.*" (Emphasis added).

"When reviewing a claim of error relating to jury instructions, the instructions must be viewed as a whole." *United States v. Marabelles,* 724 F.2d 1374, 1382 (9th Cir.1984). Presented together, these instructions constitute reversible error because no rational trier of fact could be expected to differentiate second degree murder from involuntary manslaughter.

The instructions define malice aforethought in terms nearly identical to the mens rea requirement for manslaughter. The instructions make it appear as though there is no difference between the severity of second degree murder and manslaughter

or, if there is a difference, it is a distinction that lacks an articulable standard. In either case these instructions force the jury to impose guilt randomly rather than on the basis of a meaningful distinction between the crimes. If the jury had understood the difference, it might have found Lesina guilty of the lesser offense.

Of course, there is a meaningful distinction between second degree murder and manslaughter. The former requires that the jury find the element of malice aforethought and the latter does not. As we stated in *U.S. v. Celestine:*

> Malice aforethought is the condition of a person's mind. Since no one can look into the mind of another, the only way to decide what is in his mind is to *infer* it from his acts and that inference is one of fact for the jury.

510 F.2d 457, 459 (emphasis added). Malice aforethought "may be inferred from circumstances which show 'a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences.'" *Id.,* quoting *Government of Virgin Islands v. Lake,* 362 F.2d 770 (3d Cir.1966). A jury may, but need not, find that the defendant's state of mind was so extremely callous, wanton or reckless that the defendant must have acted with malice aforethought. *Stevenson v. United States,* 162 U.S. 313, 320, 16 S.Ct. 839, 841, 40 L.Ed. 980 (1896); *Celestine,* 510 F.2d at 459; *cf. United States v. Vallez,* 653 F.2d 403, 406 (9th Cir.1981) (instruction that did not require the jury to infer malice from use of a deadly weapon was proper); Manual of Model Jury Instructions for the Ninth Circuit § 8.11A comment (1984 ed.) ("[M]alice aforethought may be implied from the defendant's use of a deadly weapon or other instrument on his victim.").

Only a finding of "extreme recklessness regarding homicidal risk," Model Penal Code § 210.2 commentary at 15 (1985), will support an inference of malice aforethought.

> The difference between that recklessness which displays depravity and such extreme and wanton disregard for human life as to constitute "malice" and that recklessness that amounts only to manslaughter lies in the quality of awareness of the risk.

*United States v. Dixon,* 419 F.2d 288, 292–93 (D.C.Cir.1969) (Leventhal, C.J., concurring) (citing J. Michael & H. Wechsler, *A Rationale of the Law of Homicide,* 37 Colum.L.Rev. 701, 717 (1937). Thus, disregard for human life becomes more callous, wanton or reckless, and more probative of malice aforethought, as it approaches a mental state comparable to deliberation and intent. *Cf. Celestine,* 510 F.2d at 459 ("[m]alice aforethought ... embraces the state of mind with which one intentionally commits a wrongful act ..."). It is for the jury to determine whether a given set of facts warrants an inference of malice aforethought. If the jury finds that the defendant acted with "extreme indifference to the value of human life," Model Penal Code § 210.2 (1985), it will convict the defendant of second degree murder. *Id.* If the jury finds, however, that the defendant's mental state evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice aforethought, then it can only convict the defendant of manslaughter. *See United States v. Fleming,* 739 F.2d 945 (4th Cir.1984); *United States v. Pardee,* 368 F.2d 368, 375 (4th Cir.1966).

Accordingly, we conclude that the district court erred in failing to instruct the jury that if it found that Lesina killed Medina recklessly with extreme disregard for human life then it may infer malice aforethought. If it inferred malice aforethought, then it could find Lesina guilty of second degree murder, but if it did not infer malice aforethought from the facts presented, then it could only convict Lesina of manslaughter. The failure to instruct the jury sufficiently to draw this distinction requires reversal.

### III

The district court committed reversible error in its failure to give an instruction on killing by accident. *See United States v. Escobar de Bright,* 742 F.2d 1196, 1198 (9th Cir.1984); *Thomas v. Unit-*

*ed States*, 419 F.2d 1203, 1206 (D.C.Cir. 1969). A defendant is entitled to an instruction upon his theory of the case if the record contains evidentiary support for the theory and the theory is supported by law. *See Escobar de Bright*, 742 F.2d at 1198; *United States v. Winn*, 577 F.2d 86, 90 (9th Cir.1978); *United States v. Nevitt*, 563 F.2d 406, 409 (9th Cir.1977). Lesina's theory had some foundation in the evidence and was supported by law. Although there was conflicting evidence, the jury had no guidance in the instructions as to the consequences of believing Lesina's version of the events. An accidental killing may be second degree murder, manslaughter, or no crime at all. *Thomas*, 419 F.2d at 1205. If the jury had before it an instruction which stated the consequences of a finding that Lesina's actions had constituted accident, it might have found him guilty of the lesser offense or acquitted him entirely. Viewing the instructions as a whole and in the context of the entire trial, *Marabelles*, 724 F.2d at 1382, we conclude that the omission requires reversal.

## IV

The court refused to give Lesina's proffered instruction that, in order to prove second degree murder, the government must prove beyond a reasonable doubt that Lesina did not act in the heat of passion or upon sudden quarrel.[1] Lesina contends that the instructions relieved the government of its burden of proof as required by *Mullaney v. Wilbur*, 421 U.S. 684, 704, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975). *Mullaney* condemned an instruction which stated that malice could be conclusively implied from an intentional and unlawful act unless the defendant proved by a preponderance heat of passion on sudden provocation. 421 U.S. at 686, 95 S.Ct. at 1883. Although the court did not give a *Mullaney* instruction here, we agree with Lesina that the instructions given were inadequate.

■ We construe *Mullaney* to require jury instructions for murder to state that the government bears the burden of proving beyond a reasonable doubt the absence of heat of passion or sudden quarrel where that defense is raised. *See United States v. Lofton*, 776 F.2d 918, 921–22 (10th Cir. 1985). In *Lofton*, the Tenth Circuit held that jury instructions similar to those given in this case violated *Mullaney*. *Id.* We agree that this approach is faithful to *Mullaney*. 421 U.S. at 696, 95 S.Ct. at 1888. Repeated instructions to the effect that the government was required to prove each element of the offense beyond a reasonable doubt did not operate to cure the defect in this case. *See Lofton*, 776 F.2d at 922.

The government attempts to evade *Mullaney* on the ground that Lesina did not raise the heat of passion argument because the "central theme" of his defense was accident. We disagree. Alternate defenses are generally permitted. *See Woratzeck v. Ricketts*, 820 F.2d 1450, 1454 (9th Cir. June 25, 1987).

■ The government also contends that the court committed no error because Lesina was not entitled to a voluntary manslaughter instruction anyway. It argues that Lesina cannot "transfer" the heat of passion or sudden quarrel arising from the fight with Meanus to the victim, Medina. We find this argument unavailing. There is evidence in the record that Lesina stabbed Medina when Medina attempted to intervene in the fight. We cannot say that Medina's intervention could not have caused Lesina to act "upon a sudden quarrel or heat of passion" toward Medina. The court gave an instruction on involuntary manslaughter. Lesina was entitled to an instruction that correctly presented the government's burden of proof.

**REVERSED and REMANDED for a new trial.**

---

1. The unlawful killing of a human being without malice upon sudden quarrel or heat of pas-

sion is voluntary manslaughter. 18 U.S.C. § 1112(a).