George **DUNCKHURST**,
Petitioner–Appellant,

v.

George **DEEDS**; the Attorney General of the State of Nevada,
Respondents–Appellees.

No. 87–15052.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1988.
Decided Oct. 7, 1988.

Richard A. Wright, Wright & Stewart, Las Vegas, Nev., for petitioner-appellant.

Charles R. Gardner, Deputy Atty. Gen., Las Vegas, Nev., for respondents-appellees.

Before WALLACE, TANG and NELSON, Circuit Judges.

TANG, Circuit Judge:

Dunckhurst, a Nevada state prisoner, appeals the district court's denial of his petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254 (1982). Dunckhurst was convicted in state court of first degree murder and sentenced to two consecutive terms of life imprisonment. He contends that the trial court erred by (1) denying his requested jury instructions explicitly stating the State's burden of proof to show the admitted homicide was not committed in the heat of passion, and (2) giving instructions which precluded jury consideration of voluntary manslaughter until it had first ruled out first and second degree murder. We affirm.

I.

Dunckhurst became romantically involved with Lynn Schwartz in 1981, and they were engaged one year later. The relationship was turbulent. They frequently separated and reconciled until January, 1983, when they renewed their relationship for the last time. During the time when Dunckhurst and Schwartz were not dating, Schwartz dated Tom Jones. Schwartz told Dunckhurst that Jones was her good friend. Dunckhurst was not aware that Schwartz was sleeping with Jones.

Late one Friday night Schwartz invited Dunckhurst to her condominium, where they spent the night together. Dunckhurst was still at Schwartz's condominium Saturday afternoon when she received a call from Jones. Schwartz did not conceal her affection for Jones as she spoke with him on the telephone in Dunckhurst's presence. Dunckhurst's testimony related the following events:

And I was mad. I went to talk to her and ask her about it. And she told me why didn't I just leave, get out, just leave, leave here. So, I went and grabbed my coat and I went back to tell her something. And she turned around and looked at me dead in the eyes with so much hate and said, "By the way, I'm sleeping with him along with a couple of other guys."

And I—I just hit her. I said, "I hate you, you bitch." And she went back and I grabbed her by the neck. I was telling her to quit doing this to me. She was destroying me. To quit it. Please quit it. She was destroying me.

The last thing she said was "I love you, George."

Dunckhurst testified that after strangling Schwartz he retrieved plastic wrap from the kitchen to cover her face because it looked so bad. Then he tried to speak to her; when she failed to respond, he hit her in the stomach. He then wrapped her head in clothing, got a steak knife, and stabbed her three times in the neck. Thereafter, Dunckhurst put Schwartz in her closet, cleaned the steak knife and put it back in the kitchen, cleaned the bathroom and bedroom, and left on his motorcycle to, go play a video game. Although Dunckhurst originally denied involvement in Schwartz's death, he later confessed to strangling her.

At trial, Dunckhurst testified that he killed Schwartz while acting in the heat of passion. The crucial issue at trial was, therefore, whether Dunckhurst's actions warranted a conviction for murder or for voluntary manslaughter. In this regard, the trial court instructed the jury on first and second degree murder. First degree

murder was defined as "the willful killing of a human being, with malice aforethought, either express or implied." Malice aforethought was explained to the jury as follows:

> Malice aforethought, as used in the definition of Murder, means the intentional doing of a wrongful act *without legal cause or excuse or what the law considers adequate provocation.* The condition of mind described as malice aforethought may arise, not only from anger, hatred, revenge, or from particular ill will, spite, or grudge toward the person killed, but may also result from any unjustifiable or unlawful motive or purpose to injure another, which proceeds from a heart fatally bent on mischief or with reckless disregard of consequences and social duty. (Emphasis added.)

Voluntary manslaughter was defined in the instructions as "the unlawful killing of a human being, without malice aforethought and without deliberation or premeditation. It is a killing upon a sudden quarrel or heat of passion, caused by a provocation sufficient to make the passion irresistible."

The concept of adequate provocation was also clearly defined:

> The provocation required for Voluntary Manslaughter must either consist of a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing.

Finally, the jury was specifically instructed that:

> The defendant is presumed to be innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every *material element* of the crime charged and that the defendant is the person who committed the offense. (Emphasis added.)

After a five day trial, the jury returned a verdict of first degree murder. On January 13, 1986, the Nevada Supreme Court dismissed Dunckhurst's appeal, holding that the jury was fully instructed on the State's burden of proving beyond a reasonable doubt that Dunckhurst acted in the absence of adequate provocation; that the instruction that the jury was to consider the murder charges before the manslaughter charge did not interfere with the jury's deliberations or otherwise deprive Dunckhurst of due process; and that sufficient evidence supported the jury's verdict.

Dunckhurst filed his petition for habeas corpus with the district court on July 15, 1986. The district court denied the petition on November 3, 1987. This appeal followed.

## II.

We review the decision whether to grant or deny a petition for habeas corpus *de novo. Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). A petition for habeas corpus will be entertained only on the ground that the person in custody is being held in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a) (1982).

## III.

■ Dunckhurst argues that his murder conviction was obtained in violation of his constitutional due process rights because the Nevada trial court rejected his proposed jury instructions explicitly placing the burden of proof on the state to negate his irresistible impulse defense. Dunckhurst's proposed Instruction A read:

> The State has the burden of proving beyond a reasonable doubt that the killing was not the result of a mere blind impulse of passion or that the passion was caused by an insufficient provocation or that a reasonable cooling time had elapsed before the killing. Absent such proof by the State, you must find the defendant guilty of voluntary manslaughter.

His proposed Instruction B read:

> You are instructed that the killing of a human being upon sudden heat of passion, caused by a provocation sufficiently strong to make the passion irresistible, is

manslaughter and not murder, provided that sufficient cooling time did not intervene between the provocation and the killing for the voice of reason to be heard. The law assigns no limit within which cooling time may be said to take place. Every case must depend on its own circumstances and if you find from the evidence in this case that the State has not proved beyond a reasonable doubt that the defendant did not act upon sudden heat of passion or that the provocation was insufficiently strong to make the passion irresistible or that sufficient cooling time intervened, you will find the defendant guilty of manslaughter.

Dunckhurst argues that the trial court's refusal to accept his proposed instructions violates *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, (1975). In *Mullaney*, the Court held that the requirement under Maine law that a defendant charged with murder must prove by a preponderance that a killing occurred in the heat of passion and on sudden provocation in order to reduce the homicide to manslaughter violated due process. *Id.* at 704, 95 S.Ct. at 1892. Under Maine law, malice aforethought was an essential element of the crime of murder, as it is under Nevada law. The *Mullaney* jury was instructed, however, that, if the prosecution established that the homicide was both intentional and unlawful, malice aforethought would be *conclusively implied* unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation. *Id.* at 686, 95 S.Ct. at 1883. That instruction was, the Supreme Court held, at odds with the due process requirement that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the charged crime. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 323 (1970). It shifted the burden to the defendant of proof of heat of passion on sudden provocation.

In this case, however, the burden was not shifted to Dunckhurst. The jury was properly instructed that the State was burdened with proving beyond a reasonable doubt every element of the offense of first degree murder. The instructions cautioned that, to convict Dunckhurst of first degree murder, the jury must find beyond a reasonable doubt that he committed (1) an unlawful killing, (2) with deliberation and premeditation, and (3) with malice aforethought. Malice aforethought was defined in the instructions as "the intentional doing of a wrongful act without legal cause or excuse or what the law considers adequate provocation." Adequate provocation was defined as a "highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person."

Thus, to find Dunckhurst guilty of first degree murder, the jury necessarily had to find that the State proved beyond a reasonable doubt that Dunckhurst killed Schwartz with malice aforethought, i.e., without adequate provocation. No burden was placed on Dunckhurst to show that adequate provocation existed. *Mullaney's* admonition that the State bears the burden of proving the absence of provocation, where lack of adequate provocation is an element of the crime charged, was satisfied.

Dunckhurst argues that our decision in *United States v. Lesina*, 833 F.2d 156 (9th Cir.1987), compelled the district court to accept his proffered instructions. We disagree. *Lesina* should not be read as to *require* special instructions on the burden of proof where a heat of passion defense is raised. The district court's instructions in *Lesina* totally failed to distinguish between second degree murder and involuntary manslaughter. 833 F.2d at 159. In contrast, there is no allegation in this case that first degree murder, second degree murder, and voluntary manslaughter were inadequately distinguished. In light of the convoluted instructions in *Lesina*, we held that a general instruction to the effect that the government was required to prove each element of the crime beyond a reasonable doubt was meaningless. *Id.* at 160. Given the relative clarity of the instructions in this case, the same type of instruction was sufficient to apprise the jury of the State's burden.

Dunckhurst's reliance on *United States v. Lofton*, 776 F.2d 918 (10th Cir.1985), is similarly misplaced. *Lofton* requires an instruction explicitly stating that the government must prove the absence of heat of passion beyond a reasonable doubt. In *Lesina* we agreed that *Lofton's* approach is faithful to *Mullaney*. *Lesina*, 833 F.2d at 160. We do not believe such an instruction is specially required by *Mullaney*. Where lack of adequate provocation is an element of the charged crime, and the jury is instructed that the government must prove every element beyond a reasonable doubt. *Mullaney* and *Lesina* are satisfied.

Moreover, both *Lesina* and *Lofton* involved federal prosecutions. The *Lofton* approach, approved by this circuit in *Lesina*, ensures that *Mullaney* is complied with in federal prosecutions. Although *Mullaney* must be followed in state as well as federal prosecutions, the state prosecution need not conform precisely as *Lesina* suggests. Our standard when reviewing a habeas petition is whether constitutional due process was accorded the defendant. *See* 28 U.S.C. § 2254(a). We agree with the Eighth Circuit's formulation of that standard in *Tyler v. Wyrick*, 635 F.2d 752, 753 (8th Cir.1980), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981):

> A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. The error must so infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth amendment. (Citations omitted.)

Two years after *Mullaney*, in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Supreme Court upheld a state statute requiring a defendant to prove by a preponderance of the evidence the affirmative defense of "extreme emotional disturbance" to reduce second-degree murder to manslaughter. Under New York law, lack of adequate provocation was not an element of the charged crime. Thus, the *Patterson* court did not retreat from *Mullaney's* requirement that the state must prove every element of the charged offense beyond a reasonable doubt, *id.* at 215, 97 S.Ct. at 2329; however, *Patterson* makes clear that a state's procedures are not subject to the proscriptions of the due process clause unless they offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 202, 97 S.Ct. at 2322 *[quoting Speiser v. Randall*, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958)]. The jury was properly instructed that the elements of the crime of first degree murder, including malice aforethought, had to be proved beyond a reasonable doubt. *See In re Winship, supra*. *Mullaney* establishes the minimum below which the State may not go; because the burden of proof was not shifted unconstitutionally in this case *Mullaney* was satisfied.

■  Finally, Dunckhurst protests the trial court's instructions which precluded jury consideration of voluntary manslaughter until the jury had first ruled out first and second degree murder. According to Dunckhurst, the format and structure for jury determination was such that the jury could not consider heat of passion until it had decided the murder counts and thus his heat of passion defense was never considered in the jury's determinations. Dunckhurst's argument is unpersuasive.

Because the State had to prove the absence of adequate provocation beyond a reasonable doubt to obtain a first degree murder conviction, the jury necessarily had to consider Dunckhurst's heat of passion defense. The jury instructions, viewed as a whole, *Lesina*, 833 F.2d at 158, satisfy constitutional due process. *See Patterson*, 432 U.S. at 205–06, 97 S.Ct. at 2324–25; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 323 (1970).

The district court's denial of Dunckhurst's petition for writ of habeas corpus is accordingly

AFFIRMED.