**Ronald JONES, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 97–5202.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1998.

Decided Nov. 30, 1998.

398

Kevin M. Schad (argued and briefed), Schad, Buda & Cook, Cincinnati, OH, for Petitioner–Appellant.

Stuart J. Canale, Asst. U.S. Attorney (argued), Paul M. O'Brien, Asst. U.S. Attorney (briefed), Office of U.S. Attorney, Memphis, TN, for Respondent–Appellee.

Before: KENNEDY and COLE, Circuit Judges; RUSSELL, District Judge *

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

## OPINION

COLE, Circuit Judge.

Ronald Jones appeals the district court's dismissal of his motion to vacate his conviction or modify his sentence pursuant to 28 U.S.C. § 2255. On appeal Jones raises three issues. First, he contends that the district court erred in finding that he failed to establish that his lawyer, William Massey, provided ineffective assistance of counsel. Second, Jones claims that the magistrate judge committed reversible error by exceeding the scope of the district court's order to determine whether Jones was prejudiced by Massey's alleged deficient performance. Finally, Jones contends that the district court erred by concluding that a recent amendment to U.S.S.G. § 3B1.1 did not require a new sentencing hearing.

For the following reasons, we **AFFIRM** in part and **REVERSE** in part, and **REMAND** for further proceedings in accordance with this opinion.

## BACKGROUND

On or about February 20, 1991, Jones was arrested and charged with attempted possession with the intent to distribute six kilograms of cocaine, a controlled substance.[1] The arrest was the result of a "drug deal" orchestrated by law enforcement officers. The officers gained the cooperation of Robert and Mel Woods, cousins from whom Jones had made prior drug purchases. Mel was working as an informant for DEA Special Agent James Akagi. Through the Woods' cooperation, the officers videotaped Jones's purchase of what he believed to be cocaine. Jones was arrested shortly afterwards.

Following his arrest, Jones's mother retained William Massey to defend him. Based on conversations with Jones and a review of Jones's criminal history, Massey concluded that the only possible defense Jones could raise was entrapment. Because Jones's criminal history did not reflect any

---

1. Jones was charged with attempted possession because the substance he purchased was not actually cocaine.

prior felony convictions, Massey believed that he could prove that Jones lacked predisposition to commit the offense. Considering that their defense hinged on Jones's lacking a predisposition to commit drug offenses, Massey asked Jones whether he had committed prior offenses or engaged in conduct that could affect their entrapment claim. Though it is his practice to do so, Massey does not specifically remember advising Jones that this type of relevant conduct would also be an issue at sentencing.

Considering Jones's prior criminal history—no convictions, Massey assured him that if he went to trial there was little chance that the court would impose a sentence exceeding the statutory minimum of ten years pursuant to 21 U.S.C. § 841(b)(1)(A). At this time, Massey was not aware of the government's evidence that Jones had made prior purchases from the government informants involved in the current undercover operation. The government offered a plea agreement by which Jones would plead guilty and receive a sentence of five years imprisonment. Jones rejected the plea offer, presumably based on his belief that he was subject—at most—to ten years' imprisonment. Just before trial, the Assistant United States Attorney, Mr. Folkes, advised Massey that the government had evidence that Jones was involved in other cocaine sales. According to Massey, he asked Jones about the government's claim and advised him that if the government indeed had evidence of prior drug sales it would quash their entrapment defense. Massey could not remember, however, whether he warned Jones that prior drug purchases that did not result in convictions could also increase his potential sentence. In

response to Massey's warning, Jones replied: "It's my word against theirs."

At trial, Jones denied involvement in any prior drug sales. According to Jones's testimony, the current charge was the first time he dealt in cocaine, and he only did so at the insistence and nagging of the police informants. The jury apparently did not believe Jones and convicted him. Rather than the ten-year sentence Jones believed to be the maximum, the district court sentenced Jones to 324 months, or twenty-seven years, of imprisonment, taking into account Jones's relevant conduct.

In addition, the district court applied several enhancements under the guidelines to arrive at Jones's sentence. Among the enhancements it applied was an increase of two levels pursuant to U.S.S.G. § 3B1.1. This guideline provision requires a sentencing court to enhance a sentence two levels if the court finds that the accused served in a managerial or supervisory role during the criminal activity.[2] The court concluded that because Jones had a "high-level" position in the criminal enterprise as evidenced by his financial means of procuring large quantities of cocaine, he qualified for an enhancement under the provision.

Jones appealed his conviction and sentence, and this court affirmed. Jones then filed a § 2255 motion in the district court in which he raised several claims. First, Jones asserted that Massey had rendered ineffective assistance of counsel when he failed to advise Jones of the effect that relevant conduct would have on Jones's sentence. Specifically, Jones claimed that when he had to decide whether to accept a plea offer for five

---

**2.** Section 3B1.1 provides:

*Aggravating Role:*

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity

other than described in (a) or (b), increase by 2 levels.

In 1993, the Sentencing Commission issued Application Note 2, which provides that to qualify for an adjustment under the provision the accused must have been the organizer, leader, or supervisor of one or more other participants. The Application further explains, that an upward departure may be warranted, but is not required under this section where a defendant did not supervise one or more participants, but nonetheless exercised management responsibility over the property, assets, or activities of a criminal organization. (Amendment 500, Nov. 1, 1993)

years imprisonment, Massey failed to advise him that there was a risk that relevant conduct could increase his sentence dramatically. Second, Jones claimed that intervening changes in the law permit him to raise several sentencing errors in his § 2255 motion. Finally, Jones claimed that because he forfeited property seized as a result of his arrest, his subsequent criminal prosecution for the same offense violated the Double Jeopardy Clause.

The district court concluded that Jones's claims of sentencing error did not rise to the level of constitutional significance required for a § 2255 motion or were precluded because they were fully addressed on direct appeal. Moreover, the court concluded that those claims that Jones did not raise on direct appeal were procedurally barred. The court also found that petitioner's claim of double jeopardy was without merit, considering the Supreme Court's holding in *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

■ The district court did, however, order an evidentiary hearing on Jones's ineffective assistance of counsel claim. Specifically, the order instructed the magistrate judge to conduct a fact-finding inquiry into whether Massey's performance actually fell below an objective standard of reasonableness, the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),[3] the standard for evaluating ineffective assistance of counsel claims. The district court adopted the magistrate judge's finding that not only did Jones's claim fail because Massey's performance did not fall below an objective standard of reasonableness, it also failed because Jones failed to establish prejudice by showing that he would have accepted the plea offer of five years but for the alleged deficiency.

On appeal, Jones raises three issues. First, he contends that the district court erred in finding that he failed to establish that Massey provided ineffective assistance of counsel. Second, he contends that the magistrate judge committed reversible error

by exceeding the scope of the district court's order regarding the evidentiary hearing. Finally, Jones argues that the district court erred in concluding that a recent amendment to U.S.S.G. § 3B1.1 did not require a new sentencing hearing with respect to the district court's application of that provision to his sentence.

## I. Ineffective Assistance of Counsel

Jones claims that he received ineffective assistance of counsel because Massey failed to advise him of all the possible consequences of proceeding to trial. Specifically, he claims that Massey did not advise him that the court may consider relevant conduct to enhance his sentence and that relevant conduct under the guidelines includes prior drug deals irrespective of convictions for those deals. Moreover, Jones claims that Massey rejected the five-year plea offer before consulting him, and advised Jones that this was a good case to argue because Jones had no prior convictions and the substance he actually purchased was not cocaine. Despite Jones's testimony that Massey rejected the five-year plea offer without consulting him, the magistrate judge concluded otherwise, finding that Massey told Jones about the plea offer, advised him that it was a good deal, and that Jones rejected the offer in hopes of a favorable outcome at trial. Jones apparently took his chances between an acquittal and the statutory minimum sentence of ten years, and lost.

■ The district court found that Massey's performance in advising Jones of the risks involved with a trial as opposed to accepting the plea offer did not fall below an objective standard of reasonableness. We agree with this conclusion. The facts suggest that Massey adequately advised Jones with respect to the plea offer and the potential sentence that he would receive based on the information that Jones gave him. If Jones had no prior offenses, his sentence most likely would not have exceeded ten years. Crediting Massey's testimony over

---

3. The second prong of *Strickland* requires the petitioner to establish, in addition to the deficiency of counsel's performance, that there is a rea-

sonable probability that, but for counsel's errors, the results of the proceedings would have been different. *See id.* at 694, 104 S.Ct. 2052

Jones's, the magistrate judge concluded that the evidence did not support a finding that Massey's performance fell below the objective standard of professionalism. We agree that the evidence supports this conclusion. Though Massey could have been more explicit in his advice to Jones, the record does not suggest that his performance was deficient. However, we note that counsel's conduct in failing to inquire further about his client's other conduct or to advise him of the consequences of other possible conduct comes close to being objectively unreasonable.

Even if Massey failed to advise Jones that relevant conduct could affect his sentence, Jones has not shown that he would have accepted the plea offer. The fact that he lied at trial when he knew the government was aware of his prior cocaine deals suggests otherwise. Therefore, we affirm the district court's conclusion that Massey did not render ineffective assistance during Jones's consideration of the five-year plea offer.

## II. Magistrate Judge's Report and Recommendation

Jones next argues that the magistrate judge committed reversible error when he exceeded the scope of the district court's order and found that Jones failed to meet both prongs of the *Strickland* analysis. Jones's claim is based on his belief that the district court determined, based on Jones's allegations alone, that Massey's performance was deficient. Because the district court concluded that Massey's performance was deficient, Jones reasons, the magistrate judge's sole obligation was to determine whether there were facts supporting Jones's claim that he was prejudiced by the deficiency. By finding facts regarding both prongs and recommending to the district court that Jones failed both elements of the *Strickland* analysis, Jones contends that the magistrate judge exceeded the scope of the order and essentially overturned the district court's finding that Massey's performance was deficient. This argument fails for several reasons.

First, the district court did not make conclusive findings that Massey's performance was deficient. To support his claim, Jones points to the district court's statement that: "[A]t this stage in the proceeding, [Jones] has established that his counsel failed to perform according to prevailing professional norms as required by the first prong of *Strickland*." Though compelling, the court's other statements belie the conclusive nature of this statement. Specifically, in announcing its order, the court stated that Jones's allegations that Massey insisted that he would serve only ten years, instead of the 324 months to which he was actually sentenced may, *if proven*, fall below an objective standard of reasonableness. Moreover, during its analysis of the deficiency prong of the *Strickland* issue, the district court only referred to Jones's allegations. It would be unreasonable to believe that a court would decide the performance of counsel solely on the allegations of his former client. The court's analysis simply does not warrant a conclusion that the court engaged in careful consideration and analysis with respect to Massey's performance if the court merely considered Jones's allegations *at that stage in the proceedings*.

Additionally, the district court acknowledged that its original order lacked clarity as to the scope of the magistrate's duty. Nevertheless, the court intended and expected the magistrate judge to conduct a hearing on facts relevant to both prongs of *Strickland*. Rejecting Jones's argument, the court stated: "The court could hardly have made a factual finding based on the allegations of the petition [sic] that counsel's performance was in fact deficient."

Finally, the court conducted a *de novo* review of the magistrate's findings and adopted the magistrate's report and recommendation that the facts did not support a finding that Massey rendered ineffective assistance during his representation of Jones and, more specifically, during Jones's consideration of the five-year plea offer. Rather, the facts proved that Massey advocated the only defense available to Jones and that the "defense was undercut and destroyed by defendant's failure to fully advise counsel of his prior drug dealings." More important, the court found that Massey, though he was unaware of Jones prior drug dealing with

Woods, advised Jones that the five-year offer was a "really good offer." The facts suggest that even if Jones had proved the first prong of *Strickland*, he has not shown that he was prejudiced by Massey's performance. Accordingly, we hold that the magistrate judge did not commit reversible error by conducting an evidentiary hearing with respect to both prongs of the *Strickland* test.

### III. Sentencing Error

Finally, Jones claims that the district court erred by not applying the 1993 amendment to U.S.S.G. § 3B1.1 to determine whether his sentence should be enhanced under that provision. Jones's position has merit.

■ First, Jones's petition for relief with respect to this issue is properly before this court. The Supreme Court has stated that § 2255 permits relitigation of an issue raised on direct appeal if the defendant is in custody and there is an intervening change in the law. *See Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Jones was sentenced on November 13, 1992 and has since remained in custody. Almost one year after his sentencing, the Sentencing Commission issued Amendment 500 which amended the application notes to § 3B1.1. According to the Commission, the amendment "clarifies" the operation of the section to aid the courts of appeals in applying it. *See* U.S.S.G. § 3B1.1, comment (n.2). The district court determined that although Amendment 500 constituted an intervening change in existing law, the amendment was not applicable to Jones because it was not retroactive. The Sentencing Commission has stated that as a general policy, amendments to the Guidelines are prospective. *See* U.S.S.G. § 1B1.10(a). Despite this general policy, the Commission has provided for exceptions. In § 1B1.10(c), the Commission lists those amendments that warrant retrospective application. In addition, the Supreme Court has acknowledged the Commission's broad and explicit power to decide whether and to what extent its amendments will be given retroactive effect. *See Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991).

The district court concluded that because the Commission has the power to determine which amendments are retroactive and has specifically listed those amendments in U.S.S.G. § 1B1.10(c), the fact that Amendment 500 is not listed suggests that the Commission did not intend for it to apply retroactively.

The district court's analysis fails to recognize that the Commission may not have seen the need to list Amendment 500 in § 1B1.10 (c), because the Amendment is a clarification of the law rather than the result of a policy determination that specific conduct warranted a change in the sentence range. In other words, it is not a substantive change in the law. Several courts have drawn this distinction between amendments aimed at clarifying an existing Guideline provision and those aimed at making substantive changes in the level of punishment warranted by certain conduct. In *United States v. Gross*, 26 F.3d 552 (5th Cir.1994), the Fifth Circuit held that Amendment 500 applied to the petitioner's sentencing claim though it was not in effect at the time petitioner was sentenced. *See id.* at 555. The court reasoned that if an amendment that went into effect after sentencing was merely changed to clarify the application of a Guideline and not intended to make substantive changes to the Guideline, then courts may apply it to a preexisting sentence. *See id.* Whether an amendment can be considered clarifying depends on whether the Commission specifically stated so. *See United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir.1988) (Commission's view of its purpose in revising guidelines and commentary is entitled to considerable deference.)

This court has not explicitly held that such a distinction exists between amendments passed for clarification purposes and those with substantive changes with respect to the issue of retroactivity. Several of our cases, however, lead us to conclude that such a distinction has been recognized. In *United States v. Milton*, 27 F.3d 203 (6th Cir.1994), this court discussed the distinction between amendments meant to clarify and those resulting in substantive changes to the Guidelines. *See id.* at 210. The court's analysis is instructive because it recognized that such a

distinction existed. Though it rejected the defendant's claim that the amendment was retroactive, it did so primarily because it considered the amendment a substantive change rather than a mere clarification. *See id.* Specifically, this court stated: "Unless the amendment was clarifying, as discussed below, both the Guidelines and case law prohibit giving Milton the benefit of both the 1988 Guidelines range and the 1992 amendment." *Id.* In addition, in *United States v. Williams,* 940 F.2d 176 (6th Cir.1991), this court noted that clarifications to Guideline provisions have retroactive application, while substantive changes do not. *See id.* at 182 n. 4.

A petitioner is entitled to the advantage of receiving the sentence he would have received had the Commission initially drafted an unambiguous provision. It is unfair to punish a defendant for the Commission's lack of clarity, especially when the Commission acknowledges and corrects the ambiguity. Clarification implies that prior application of the amendment resulted in errors. This is certainly distinct from the Commission's decision that a prior provision was unduly harsh or too lenient, and that a revision is necessary on that basis. Accordingly, we hold that Amendment 500 is a clarifying amendment and applicable to Jones's sentence.

■ Additionally, we address the district court's supposition that even if Amendment 500 applied retroactively, the leadership enhancement applied to Jones because he had managerial control over the assets—in this case drugs—of the criminal enterprise. Thus, the enhancement could apply, the court concluded, even if Jones did not have managerial control over other individuals involved in the conspiracy. This conclusion, however, is contrary to not only the language of U.S.S.G. § 3B1.1, but also to the law in this circuit. For the enhancement to apply, the application notes to U.S.S.G. § 3B1.1 require a finding that the defendant was an organizer, leader, manager, or supervisor of one or more participants. *See* U.S.S.G. § 3B1.1, comment (n.2). Nonetheless, a court may depart upward when the requirements for enhancement are not met if the defendant exercised management responsibility over the property or assets of the criminal organization. *See id.* The district court concluded that this language permitted the court to enhance a defendant's sentence regardless of whether the defendant exercised control over any persons involved in the conspiracy if the defendant exercised control over the assets of the conspiracy. The language, however, though it authorizes an *upward departure,* does not require an *enhancement* under those circumstances. Furthermore, this court has expressly stated that enhancement is not required unless the defendant exercised supervisory control over at least one other participant.

> [U]nder the amended provision, the method by which the defendant's sentence is increased depends on whether the defendant exercised control over an individual or over tangible property, assets or activities of a criminal enterprise. Where the defendant exerts control over at least one participant in a supervisory, managerial, leadership, or organizational capacity, a sentence enhancement is required under § 3B1.1. Whereas, where a defendant does not exercise control over an individual but over property, assets, or activities, an upward departure may be warranted.

*United States v. Gort–DiDonato,* 109 F.3d 318, 321 (6th Cir.1997) (citations omitted). Thus, managerial control over the assets or tangible property of the criminal enterprise, though sufficient for a discretionary upward departure, is not a basis for enhancement under U.S.S.G. § 3B1.1. *See id.* Accordingly, a district court may not enhance a defendant's sentence on that basis.

### CONCLUSION

For the foregoing reasons we **AFFIRM** in part and **REVERSE** in part, and **REMAND** for resentencing consistent with this opinion.