**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0017n.06

**No. 17-1176**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 08, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MICHAEL HOWARD FERGUSON, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

---

BEFORE: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Michael Ferguson pleaded guilty to a state charge of being a felon in possession of a firearm based on law enforcement's finding guns at his home from a search conducted during a murder investigation. The state court sentenced Ferguson to twenty-four months of imprisonment. Separately, Ferguson pleaded guilty to a federal felon-in-possession charge when he was caught selling guns (and drugs) to an undercover officer. The court below sentenced Ferguson to 105 months of imprisonment, which was within the recommended Guidelines range of 84 to 105 months, and ordered this sentence to run consecutively to Ferguson's undischarged state sentence.

Ferguson appeals, arguing that his sentence is procedurally and substantively unreasonable because the district court did not adequately explain its reasoning for ordering a consecutive sentence, relied on unreliable and inaccurate information in reaching its decision, and erroneously added two points to Ferguson's criminal-history score. But because the district

court discussed the factors of 18 U.S.C. § 3553(a) in deciding the length of Ferguson's sentence and whether it should run consecutively, we affirm the district court's imposition of a consecutive sentence. The district court also did not rely on inaccurate or unreliable information when it sentenced Ferguson. And even if such reliance were deemed erroneous, it would be harmless error. So we affirm the district court on this issue as well. We also affirm the district court's adding two points to Ferguson's criminal-history score because Ferguson was still under probation when he sold one of the guns to the officer on May 19, 2015. We therefore affirm the district court's order in all respects.

## I

This case arises out of four transactions between Ferguson and an undercover officer conducted from within the officer's car at a McDonald's parking lot in Clinton Township, Michigan. Ferguson first sold a firearm to the officer in May 2015. In June 2015, Ferguson sold Vicodin pills to that same officer. The officer noticed that a young child was in Ferguson's car during this transaction. In July 2015, Ferguson sold the officer another firearm and two 17-round magazines. Finally, Ferguson sold yet another firearm to the officer in September 2015.

Also in September 2015, the Detroit Police Department investigated Ferguson for his possible involvement in the murder of a man named Osean Lockett. A witness named William McKithen reported that he saw Ferguson, wearing a mask and brass knuckles, approach Lockett from behind and punch Lockett in the back of his head. According to McKithen, Ferguson then dragged Lockett to Ferguson's backyard, and McKithen heard gun shots shortly thereafter.

McKithen's account of events led to a search of Ferguson's home, during which law enforcement found a black mask, brass knuckles, and three loaded guns. Ferguson admitted to owning brass knuckles and a black mask, but he denied being involved in Lockett's murder and

denied ever selling firearms after July 6, 2015. Ferguson was charged in state court for murdering Lockett and with a felony firearms count. The state prosecutor later dropped the murder charge, and Ferguson pleaded guilty to the felony firearms count for possessing one of the guns found in his home during the search. He received a two-year state prison sentence.

As for the three guns that Ferguson sold to the undercover officer, Ferguson was charged federally for being a felon in possession of a firearm. He pleaded guilty. The presentence investigation report ("PSR") recommended a Guidelines range of 84 to 105 months. Ferguson objected to certain findings in the PSR, arguing that his criminal history was overstated and that the probation department erroneously added two points to his criminal history under the assumption that he was on probation at the time he sold one of the guns. At sentencing, Ferguson argued for a "downward departure or a downward variance" and a sentence of forty months. Also, Ferguson briefly asked that his sentence be offset by the six months that he had already served on his state-court sentence. The government argued for an upward variance and a sentence of 120 months, adding that such a sentence should run consecutively with Ferguson's two-year state sentence because each sentence involved separate crimes.

The district court rejected both parties' arguments, while commenting that the government likely had "better" support for an upward variance. As part of this discussion, the district court expressed concern that Ferguson was apparently "taking his daughter to work" and that he was selling not just guns but also drugs. The district court noted that it would not rely on McKithen's statements to make a variance determination, but that it would rely on "information provided to the police by McKithen before he testified" and acknowledged the items found at Ferguson's residence and their consistency with the witness's report of the murder of Lockett.

3

Despite noting these considerations, the district court, as discussed, still rejected the government's request for an upward variance.

Ultimately, the district court concluded that the probation department had correctly calculated a Guidelines range of 84 to 105 months and sentenced Ferguson to 105 months of imprisonment that would run consecutively to Ferguson's state sentence. In doing so, the district court discussed the § 3553(a) factors, specifically noting the seriousness of Ferguson's offense and his apparent lack of respect for the law and failure to learn from previous violations. Ferguson filed a timely notice of appeal on February 16, 2017.

## III

We must vacate a sentence by a district court if the district court abused its discretion and imposed an unreasonable sentence. *Gall v. United States*, 552 U.S. 38, 56 (2007). A sentence may be unreasonable either procedurally or substantively, or both. *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008). A sentence is procedurally unreasonably if the district court incorrectly calculates the Guidelines range, "treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51 (2007). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Brown*, 501 F.3d 722, 724 (6th Cir. 2007). Ultimately, a sentence imposed must, among other things, be "sufficient, but not greater than necessary . . . , to reflect the seriousness of the offense, to promote the respect for the law,

and to provide just punishment for the offense." 18 U.S.C. § 3553(a); *see United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015).

Ferguson contends that the district court did not adequately explain its reasoning for ordering a consecutive sentence, decided his sentence based on unreliable and inaccurate information, and erroneously added two points to his criminal-history score. He also argues that his sentence is substantively unreasonable. For the reasons that follow, we find his arguments unpersuasive.

*A. The Consecutive Sentence*

Ferguson argues that the district court did not adequately explain its reasons for imposing a consecutive sentence on him, pointing out that "the district court did not mention USSG § 5G1.3 even once." But Ferguson did not object at the sentencing hearing to the district court's explanation for imposing a consecutive sentence. We therefore review for plain error. *See United States v. Harmon*, 607 F.3d 233, 236 (6th Cir. 2010).

"[I]n determining whether the terms imposed are to be ordered to run concurrently or consecutively, [the court] shall consider . . . the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3584(b). When imposing a consecutive sentence, a district court does not abuse its discretion, let alone plainly err, if it "makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009).

Here, the district court did not explicitly mention §5G1.3, the Guideline on consecutive sentences. But this is not dispositive, which Ferguson himself concedes. The district court made clear its rationale for imposing a consecutive sentence when it discussed the § 3553(a) factors' relation to Ferguson. *See United States v. Williams*, 664 F. App'x 517, 520 (6th Cir. 2016).

Moreover, the district court's rationale was consistent with the relevant commentary for USSG §5G1.3, so Ferguson was not prejudiced by any error, assuming one even occurred. *See United States v. Olano*, 507 U.S. 725, 734 (1993).

Ferguson's state felon-in-possession conviction involved unrelated conduct to his federal felon-in-possession conviction: the state conviction resulted from a different gun possession (the guns found during the search of his home) than the one underlying the federal conviction (the guns sold in the summer of 2015). Accordingly, the Guidelines advised the district court here to "achieve a reasonable incremental punishment for [Ferguson's] instant offense" when deciding between concurrent and consecutive sentences. *See* USSG §5G1.3(d); §5G1.3(d), comment. (n.4). The commentary to §5G1.3(d) lists various factors for district courts to consider in reaching a "reasonable incremental punishment." Among those factors are the § 3553(a) considerations themselves, which we have held are sufficient to support a consecutive sentence. *Williams*, 664 F. App'x at 521 (citing *Berry*, 565 F.3d at 343). Although the district court here did not repeat its § 3553(a) analysis for its decision to impose a consecutive sentence, we have never held that such repetition is necessary. *Id.* Rather, the district court's determination of the length of Ferguson's sentence and its decision to impose a consecutive sentence "were intertwined." *See United States v. Johnson*, 640 F.3d 195, 209 (6th Cir. 2011).

The district court first noted that it could settle on a sentence within the Guidelines range that was, as required, "sufficient but not greater than necessary to reflect the seriousness of this offense conduct." It took "into account the offense conduct and the offender's background," as well as the factors of deterrence and incapacitation. It discussed that Ferguson had "not learned from previous encounters with courts" and that his history "reveals increasingly concerning

behavior." Finally, in light of those considerations, the district court went on to order the length of Ferguson's sentence and whether it would run consecutively:

> [T]he Court, having considered the sentencing guidelines and the factors contained in Section 3553(a) of Title 18, hereby commits the defendant, [] Ferguson, to the custody of the United States Bureau of Prisons for a term of 105 months. This term shall be served consecutively to the term of imprisonment the defendant is currently serving with the Michigan Department of Corrections.

The foregoing is a sufficient explanation for imposing a consecutive sentence. Therefore, we hold that the district court did not plainly err in ordering Ferguson's sentence to run consecutively with his undischarged state sentence.

### *B. The Evidence*

When challenging the evidence considered by a district court at sentencing, "the defendant must establish that the challenged evidence is materially false or unreliable, *and that such false or unreliable information actually served as the basis for the sentence.*" *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990) (emphasis added). Ferguson argues that the district court relied on three allegedly untrue premises: (1) that he had been involved in the murder of Lockett, (2) that his bare arrest records supported that he acted violently in the past, and (3) that he took his daughter with him to the gun sales. But the district court does not appear to have actually relied on any of these premises when it sentenced Ferguson. Even if it did, these facts were not materially false or unreliable, and any reliance on them by the district court would have been harmless.

Ferguson first contends that the district court erroneously relied on McKithen's statement that he saw Ferguson punch Lockett with brass knuckles while wearing a mask. According to Ferguson, this statement constitutes "double hearsay" and the district court did not find sufficient corroborating evidence to accept the statement.

District courts are free to consider hearsay and facts relating to unconvicted conduct at sentencing. *See United States v. Davis*, 170 F.3d 617, 622 (6th Cir. 1999) (explaining that hearsay is admissible at sentencing); *United States v. Milton*, 27 F.3d 203, 208 (6th Cir. 1994) ("This circuit clearly allows district courts to consider acquitted conduct at sentencing."). Hearsay evidence, however, must still "bear some minimal indicia of reliability." *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992).

When considering the government's argument for an upward variance, the district court expressly stated that it would not rely on McKithen's statements. But the district court did explain that it would rely on the information McKithen provided to the police "indicating that he saw a man he recognized to be the defendant with brass knuckles," that the man was wearing a mask, and that brass knuckles and a mask were found at Ferguson's home. This information, according to the district court, gave it "that much greater concern about the defendant's criminal trajectory." Nonetheless, the district court rejected the requested upward variance. Later, when the district court actually sentenced Ferguson, it did not even mention McKithen's statements. At any rate, even if the district court had relied on McKithen's statements, and even if they were hearsay, the mask and brass knuckles found in the search of Ferguson's home provide sufficient indicia of reliability to support the statements. We therefore hold that the district court did not abuse its discretion, even assuming it relied on McKithen's statements.

Ferguson also takes issue with the district court's treatment of four dismissed charges from his arrest records. Ferguson was charged with five counts in November 2012 arising from a single incident: assault with a dangerous weapon; assaulting, resisting, and obstructing a police officer (comprising two counts); felony firearm possession; and carrying a concealed weapon. Ferguson pleaded guilty to carrying a concealed weapon, and the other four charges were

8

dismissed. At sentencing in this case, when arguing for a downward departure, Ferguson's lawyer contended that "none of Ferguson's prior conduct involved crimes or even *allegations* of violence" (emphasis added). In response, and again in arguing against a downward departure, the government referenced the four dismissed charges from November 2012 as an example of at least *alleged* violent conduct. Ferguson now argues that the district court "appeared to accept" this claim by the government regarding his history of violent conduct when the court stated that "[t]he trajectory of offenses here is disturbing." Because, according to Ferguson, due process does not allow the use of bare arrest records for sentencing, the district court erred in making such a conclusion.

Prior arrest records may be considered when there are specific facts available concerning the arrests. *See United States v. Matheny*, 450 F.3d 633, 642 (6th Cir. 2006). And as already discussed, district courts may consider unconvicted conduct at sentencing. But more importantly, the district court made this statement only in the context of considering and rejecting Ferguson's request for a downward departure. When the district court sentenced Ferguson and explained its reasoning, the court made no mention of these four dismissed charges. Ferguson therefore cannot establish that these records formed a basis of his sentence, and his argument for improper reliance fails accordingly.

We now turn to the district court's discussion of the presence of Ferguson's daughter at the illegal sales. When considering the government's argument for an upward variance, the district court commented that Ferguson's "[t]aking his daughter to work is not supposed to include having her in the back seat when he's selling guns on the street. And he was selling not just guns, but whatever illegally came into his possession that might have value." The district

court then noted that this fact, along with others, "reveal[s] history and characteristics of the defendant," but still rejected the government's argument for an upward variance.

Ferguson latches on to the district court's statement here, arguing that the transaction at which a young girl was alleged to be present was the drug sale, not the gun sale, and that the young girl seen at the transaction was never proved to be his daughter. Therefore, according to Ferguson, a remand for resentencing is necessary because "the record provides no clue about whether this factual difference would have made a difference to this district judge." We disagree.

A district court's findings of fact are reviewed for clear error. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016). But under the harmless error rule, any such error that "does not affect substantial rights must be disregarded." *See* Fed. R. Crim. P. 52(a); *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015). The district court made the statement about Ferguson's daughter when considering, and ultimately rejecting, the government's argument for an upward variance. The court did not mention Ferguson's bringing his daughter to one of the gun sales when it sentenced him. Regardless, assuming that this young girl was not actually Ferguson's daughter, such a fact seems more troubling than if she had been his actual daughter. And as for the distinction between gun and drug sales, although the district court mentioned gun sales, in its very next sentence it noted that the sales were not just gun sales, but also illegally possessed items, such as drugs. In other words, the pertinent fact relied upon by the district court, to the extent the court even relied on it, was that Ferguson took a young girl to one of his illegal sales. Whether she was his daughter and whether the sales were of a gun as opposed to drugs are issues that did not affect the sentence. Therefore any finding as to those issues, even assuming it was clearly erroneous, was harmless.

*C. The Criminal-History Points*

Under USSG §4A1.1(d), two points are added to a defendant's criminal history "if the defendant committed the instant offense while under any criminal justice sentence, including *probation*, parole, supervised release, imprisonment, work release, or escape status" (emphasis added). The commentary to §4A1.1(d) adds that "[f]or the purposes of this subsection, a 'criminal justice sentence' means a sentence countable under §4A1.2 . . . having a custodial or supervisory component, although active supervision is not required for this subsection to apply."

On September 18, 2014, Ferguson was sentenced by a Michigan state court to eight months of probation. On May 19, 2015, eight months and one day later, Ferguson sold one of the guns to the undercover officer. Ferguson's probation officer reported in the PSR that Ferguson's case was "officially closed" on May 20, 2015, and stated that "a copy of that discharge order was requested, received and is available for [the district court's] review." During the sentencing hearing, the district court, relying on the state court's records, found that "reasonably reliable information" supported the finding that Ferguson was still under probation as of May 19, 2015, and explained that it was "confirm[ing] the probation officer's report as stated." So the district court added two points to Ferguson's criminal-history score, which the PSR recommended. We generally review sentencing enhancements de novo. *See United States v. Groenendal*, 557 F.3d 419, 422 (6th Cir. 2009). *But see id.* (explaining that if a sentence adjustment "depends heavily on factual determinations," we review only for clear error). Under de novo review, we affirm the district court's adding two criminal-history points to Ferguson's criminal history.

Michigan Compiled Laws § 771.2(5) provides that the trial court "shall, by order . . . fix and determine the period" of probation. Under § 771.5(1), even though that initial probationary *period* terminates, the court retains discretion to amend or extend the probationary period so long

11

as the extension does not exceed the maximum period of probation allowed. *See id.*; *People v. Marks*, 65 N.W.2d 698, 701–02 (Mich. 1954). Or "the court may discharge the probationer from further supervision." Mich. Comp. Laws § 771.5(1). The court may even extend the probationary period ex parte without giving the probationer notice or an opportunity to be heard. *People v. Kendall*, 370 N.W.2d. 631, 632 (Mich. Ct. App. 1985). When the initial period of probation set by the court under § 771.2(5) terminates, the probation officer must "report that fact and the probationer's conduct during the probationary period to the court." Mich. Comp. Laws § 771.5(1). Michigan's manual for probation officers instructs them to "review the probationer's file in a timely fashion." *Manual for District Court Probation Officers*, § 7-08 Discharge, http://courts.mi.gov/administration/SCAO/Resources/Documents/Publications/Manuals/prbofc/prb.pdf (last visited Dec. 18, 2017). If the probation officer determines that the probationer has met the conditions of his probation, the officer "should prepare a Motion and Order for Discharge *from Probation*" and give it to the judge. *Id.* (emphasis added). According to the Michigan Attorney General in 1920, even if the probation officer fails to submit his report, the probationer is "a ward of the court" until he is discharged:

> The question is raised as to the failure of the probation officer to make such report to the court on or before the day the probation period ends. It is our opinion that this has no effect whatever on the relation of the court to the parties involved. The person under probation is, in a sense, a ward of the court *until such time as he is discharged* from such probation by the court . . . . The person under probation is entitled to a hearing on his discharge, but not as a matter of right on the very day that his probation period may expire, but at such time after the expiration of his probation period as may be reasonable and at the convenience of the court.

Op. Att'y Gen. Mich., No. 61 (Aug. 12, 1920) (emphasis added). When a probationer is discharged from probation, an entry of discharge must be filed with the court and the probationer is entitled to a certified copy of the entry of discharge. Mich. Comp. Laws § 771.6.

Accordingly, under Michigan law, the relevant date for determining whether a probationer is still under probation for purposes of a two-point enhancement under the Guidelines, or under a "criminal justice sentence" having a "custodial component," appears to be the discharge date. Under § 771.5(1), upon the entry of discharge *from probation*, the probationer is being "discharged from further supervision," implying that, till that point, the probationer is still under supervision. The text of § 771.5(1) even uses the term "probationer" to refer to a defendant whose initial probation period has already ended. And the required action in § 771.6—the entry of a discharge—is conditioned on the probationer's actual discharge, rather than the expiration of the probation period. That is, § 771.6 does not require an entry of discharge simply upon the expiration of the probation period, but rather upon the actual discharge. The probation period's expiration has no effect in and of itself. But even if the discharge date is not the operative date upon which probation terminates, the statutory scheme confirms that, at a minimum and contrary to Ferguson's argument, probation does not end automatically upon the expiration of the initial probationary period.

Here, the state court did not close Ferguson's case until May 20, 2015. The probation officer referred to this closure as a discharge order. And the district court affirmed the probation officer's report "as stated" after having this discharge order available to it. The district court, therefore, did not err in construing the facts available to it to hold that Ferguson was still under probation when he sold the gun on May 19, 2015. We note further that to hold that Ferguson was not at least under a criminal justice sentence "having a custodial" component would contradict the sentencing court's statutorily granted authority to amend or extend Ferguson's probationary period. We therefore affirm the district court's adding two points to Ferguson's criminal-history score.

13

*D. Substantive Reasonableness*

Finally, Ferguson contends that his sentence is substantively unreasonable because of his history, his characteristics, and the nature of the offense. He attempts to characterize his total time in both federal and state prisons—his 105-month (or eight-years-and-nine-months) federal sentence that must run consecutively to his undischarged two-year state sentence—as a "nearly eleven-year sentence" that is "well above the national average." We review for an abuse of discretion. *See Gall*, 552 at 51. Sentences within the Guidelines range are presumptively reasonable. *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). Ferguson's federal sentence was within the Guidelines range, despite his attempt to cobble together his federal and state sentences to create a cumulative, above-Guidelines sentence. And, as already discussed, the district court explicitly considered Ferguson's background, his failure to "learn[] from previous encounters with the courts," and the § 3553(a) factors. The district court then deliberately chose a sentence "sufficient but not greater than necessary to reflect the seriousness of [Ferguson's] offense conduct." Such a decision was not an abuse of discretion. *See* 18 U.S.C. § 3553(a); *Robinson*, 778 F.3d at 519.

## IV

In light of the foregoing, we **AFFIRM**.